IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WANDA CROWDER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DELTA AIR LINES, INC., et al. )<br>)<br>Defendants. ) | CIVIL ACTION FILE<br>NO. 1:18-CV-04083-ODE |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

J. Timothy Mc Donald
Georgia Bar No. 489420
Jason R. Carruthers
Georgia Bar No. 211098
**THOMPSON HINE LLP**
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA  30326
Telephone:  (404) 541-2900
Facsimile: (404) 541-2905
Tim.McDonald@ThompsonHine.com
Jason.Carruthers@ThompsonHine.com

*Attorneys for Defendants The Delta Family-Care Savings Plan,
The Administrative Committee of Delta Air Lines, Inc., and
Fidelity Workplace Services LLC*

The Delta Family-Care Savings Plan ("Plan") clearly and unambiguously states, "**[I]f** the Participant is Married, **then** <u>during such marriage</u> the Participant's Spouse shall automatically be the Beneficiary . . . ." Plan Document at § 14.03, Document Number (Doc.) 14-3. (emphasis added). The Plan does <u>not</u> state, "[I]f the Participant **[has ever been]** Married, then during such marriage **[and following such marriage]**, the Participant's Spouse shall automatically be the Beneficiary **[unless and until another affirmative designation is made after the marriage ends]** . . . .". See Id. For Plaintiff to prevail, she must add the highlighted words that are not in the Plan. For Defendants to prevail, one simply needs to read the Plan.

Recognizing as much, Plaintiff cites federal regulations that are not applicable to the facts, ignores Plan provisions where it benefits her and has scoured the Plan, citing sections that are irrelevant to this matter.[1] Plaintiff even responds to arguments Defendants do not make. Doc. 21 at 4 (arguing that Defendants "suggest the Plaintiff lacks standing . . ..").  Plaintiff is arguing about everything other than what is actually written in the Plan's relevant sections. Under those sections, Plaintiff's claim fails as a matter of law.

---

[1] E.g., Plaintiff cites Section 18.05, governing minimum required distributions once an individual has reached the age of 70 $\frac{1}{2}$, when neither Marvin Crowder, his Beneficiary, nor Plaintiff have reached the age of 70 $\frac{1}{2}$. Doc. 21 at 10 n.3.

## I. The Plain Language Of the Plan Dooms Plaintiff's Benefits Claim Under Section 1132(a)(1)(B) As A Matter Of Law.

Plaintiff claims that the Plan is "silent" as to the automatic spousal designation after the marriage ends. Doc. 21 at 7. She is wrong.

The Plan states, **"[I]f** the Participant is Married, **then** during such marriage the Participant's Spouse shall automatically be the Beneficiary." Doc. 14-3 at § 14.03 (emphasis added). The term "during" clearly limits the application of the marriage exception and automatic spousal designation to times when the Participant is married. Plaintiff admits she was not married to Mr. Crowder at the time of his death. Therefore, the marriage exception did not apply and neither does the automatic spousal designation which only lasts "during" the marriage.

This is a simple If/Then provision. "If" the Participant is Married, "Then" the marriage exception applies, but only "during the marriage."

Because Plaintiff cannot satisfy the "If" in this lawsuit as Mr. Crowder did not die while married, the "Then" never comes into play. You can read Plaintiff's Opposition forwards and backwards and she never refutes this simple truism. Her interpretation of the Plan is wrong, so her claim fails as a matter of law. See Melech v. Life Ins. Co. of N. Am., 739 F.3d 663, 672 n.14 (11th Cir. 2014) (stating that a correct decision must be upheld); see also Slakman v. Admin. Comm. of

Delta Air Lines, Inc., 660 F. App'x 878 (11th Cir. 2016) (affirming dismissal when the Plan's determination was consistent with express terms of the Plan).

### a. The Regulation Plaintiff Relies On Is Irrelevant As Plaintiff Agrees The "If" Condition Is Not Met Here.

Plaintiff attempts to side-step the term "during" by arguing that certain treasury regulations, which she states typically would not apply to the Plan, apply here. Doc. 21 at 7-9. ("[T]hese Treasury regulations generally do not apply to defined contribution plans like the Plan . . ..").  Her attempt to create ambiguity where none exists fails for at least two reasons.

First, the Plan only makes reference to treasury regulations in the context of written consent waiving the automatic spousal designation <u>during the marriage</u>. This language at the end of Section 14.03, highlighted below in italics, is only relevant <u>if</u> a death occurs <u>during the marriage</u>:

> **[I]f** the Participant is Married, **then** <u>during such marriage</u> the Participant's Spouse shall automatically be the Beneficiary **unless** the Participant waives the spousal designation and indicates another person or persons as Beneficiary on a form satisfactory to the Administrative Committee in its sole discretion *and the Spouse gives written consent* to such waiver and the naming of such person as Beneficiary on such form *(such consent to be given in conformance with regulations issued by the Internal Revenue Service).* Beneficiary designations must be received by the Plan prior to the death of a Participant.  No other Beneficiary designation other than as provided herein shall be valid.

3

Doc. 14-3 at § 14.03 (emphasis added).  As the language itself shows, the italicized language Plaintiff relies on is simply inoperative when the "If condition is not met."  In other words, "If" Plaintiff was still married at the time of his death, "Then" she could have been Mr. Crowder's Beneficiary at the time of his death.  As Plaintiff does not allege the "If" condition is met here, the italicized portion Plaintiff relies on referring to the regulation is of no relevance.

That italicized language deals with consent needed to provide the funds to someone else other than a spouse if Mr. Crowder were to have died while married.  But he was not married, and anyway Defendants do not contend that Plaintiff provided written consent to give someone else the benefits if he died <u>while</u> <u>they</u> <u>were</u> <u>married</u>.  Plaintiff's eligibility for benefits is unrelated to her consent, or lack thereof.  As the regulations only relate to the irrelevant issue of consent, Plaintiff's arguments regarding the regulations are of no merit.  Quite simply, Plaintiff was not Mr. Crowder's wife or Beneficiary at the time of his death, whether she waived the spousal designation or not.

Second, Plaintiff mischaracterizes the application of the regulation to this case as follows:

> "[i]f a participant divorces his spouse prior to the annuity starting date," as the decedent did here, "any **elections** made while the participant was married to his former spouse remain valid, unless otherwise provided in a

4

> QDRO [Qualified Domestic Relations Order], or unless the participant changes them or is remarried."

Doc. 21 at 8-9. She appears to be arguing that because Mr. Crowder elected his wife as his Beneficiary while they were married, he had to change the Beneficiary after they divorced to have the effect of removing her. This is false because the premise is false. Mr. Crowder NEVER elected that his benefit should go to Plaintiff. She never alleges that he did so.

Instead, while they were married, and only while they were married, <u>as a default rule</u>, **the Plan – not Mr. Crowder – specified Plaintiff** as Mr. Crowder's Beneficiary during the marriage. Thus, there is no election of Plaintiff by Mr. Crowder to maintain. The Plan clearly distinguishes between an affirmative election, which must be "received by the Plan," <u>see</u> <u>supra</u> at 3 (quoting Section 14.03) and its default rule, so Plaintiff has no grounds to call the default designation an "election." In addition, even if the automatic spousal designation counts as an election, it would only last so long as the Participant did not change it, as Mr. Crowder did here by affirmatively designating his sister as Beneficiary, a designation that became controlling after Mr. Crowder divorced Plaintiff.

Because of the regulation, Plaintiff claims to read the Plan as stating that absent a QDRO or written waiver, the automatic spousal designation continues until the Participant changes it through an affirmative designation following a

5

divorce.  See Doc. 21 at 9.  Her interpretation conflicts with the terms of the Plan, rendering the phrase "during the marriage" superfluous.  Courts are not to read the plain language of the Plan in a way to render language superfluous.  Bryant v. Cmty. Bankshares, Inc., 265 F. Supp. 3d 1307, 1328 (M.D. Ala. 2017) (quoting Young v. Verizon's Bell Atl. Cash Balance Plan, 615 F.3d 808, 823 (7th Cir. 2010)) ("Under general principles of federal common law, which apply to ERISA plans, '[c]ontract interpretations should, to the extent possible, give effect to all language without rendering any term superfluous . . .'").  An irrelevant regulation cannot overcome the plain language of the Plan.

### b. Plaintiff Can Find No Refuge From the Plain Terms Of The Plan In The Language of the Summary Plan Description.

In "support" of Plaintiff's misinterpretation, she cites the following language from the Summary Plan Description ("SPD"):

> "It is important to keep you Beneficiary information current.  Events such as marriage, divorce, birth, adoption or death of a family member may create a need to change your Beneficiary designation …."

Doc. 14-4, SPD, at 9.  Like Plaintiff's interpretation of the marriage exception, her interpretation of the SPD does not say what she claims it says.  The SPD does not state that the marriage exception, which only applies during the marriage, also continues after the divorce.  Id.  The SPD merely alerts participants to key life

events when they may want consider their Beneficiary information.

There are many reasons why a participant may choose to update their Beneficiary information following a divorce, even though their spouse is no longer their automatic Beneficiary. For example, a participant may want to affirmatively designate a Beneficiary after their marriage ends because they would no longer have an automatic Beneficiary after the divorce. Similarly, a participant may want to update any affirmative Beneficiary designation naming their former spouse a Beneficiary prior to the divorce because even though the automatic designation ceased, the affirmative designation would continue. Both of these examples are consistent with the terms of the Plan.

Further, both of these examples are also consistent with the Committee's interpretation of the Plan, that the marriage exception to affirmative designation only applies "during" the marriage. <u>See</u> Letter From Committee, Doc. 1-15. However, even if the SPD actually suggested what Plaintiff claims it does, in the event of a conflict the Plan controls. Doc. 14-4 at 1.

The SPD is merely a summary of the Plan's provisions. <u>Id</u>. The SPD states that the Plan controls:

> This handbook is only a summary of the benefits provided under the Plan. Its purpose is to give you an overview of the major features of the Plan and does not cover all the terms of the Plan. **The provisions of the**

> **Plan are defined in the official Plan documents, which govern the terms and operation of the Plan. The summary in this handbook does not take the place of those documents. If there is any conflict between the information in this handbook and the Plan documents, the documents will govern**.

Id. (emphasis added). It is worth noting that even the cases Plaintiff relies on indicate that the SPD is merely a summary, and not the terms of the Plan itself. Cigna Corp v. Amara, 563 U.S. 421, 438 (2010) ([W]e conclude that the summary documents, important as they are, provide communications with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of a plan …."). Thus, Plaintiff cannot side-step the plain terms of the Plan by relying on what is not said in the SPD. Owens v. Metro. Life Ins. Co., 323 F.R.D. 411, 420 (N.D. Ga. 2017) ("When the terms of the SPD conflict with governing plan documents, the terms of the SPD are not enforceable.").

Plaintiff argues that between the SPD and the Treasury Regulations, the Plan is ambiguous in a bid to invoke the doctrine of *contra proferentem*. Doc. 21 at 10. However, *contra proferentem* does not apply where Plaintiff's proffered reading results in an incomplete reading of the Plan. Pugh v. El Paso Corp. Pension Plan, No. 2:13-cv-01581-AKK, 2014 U.S. Dist. LEXIS 152617, at *11-12 (N.D. Ala. Oct. 28, 2014) (refusing to invoke *contra proferentem* where Plaintiff's interpretation of the plan required an incomplete reading of the plan). Plaintiff's

8

interpretation requires the Court to ignore the text of Section 14.03 and accept a tortured argument to manufacture an ambiguity.  See supra at 1.  Section 14.03 is clear.  The marriage exception only applies **if** the Participant is married and the automatic spousal designation only lasts during the marriage. Id.  Since the Plan's terms are clear the doctrine of *contra proferentem* does not apply.[2]

## II. The Northern District of Georgia Routinely Dismisses Repackaged Benefit Denial Claims Like This One at the Pleadings Stage.

As noted in Defendant's Motion to Dismiss, Doc. 20-1 at 22-25, Plaintiff's Section 1132(a)(3) claims fail for two reasons.  First, Plaintiff's 1132(a)(3) claims fail because they are both based on her claim that the Committee's decision was wrong.  Thus, if the Committee's decision was correct, which it was, Plaintiff cannot state a 1132(a)(3) claim.  Second, Plaintiff's 1132(a)(3) claims also fail because she has an adequate remedy under 1132(a)(1)(B).

### a. Plaintiff Can Only Recover If The Decision Was Wrong.

Plaintiff does not expressly address the fact that her 1132(a)(3) claims must fail if the Committee correctly denied her claim under 1132(a)(1)(B).  See Doc. 21

---

[2] It is worth noting that if the Plan is ambiguous, as Plaintiff argues, she still would not prevail.  The Plan vests the Committee, not Plaintiff, with the power, authority, and discretion to review claims and to interpret the terms of the Plan.  Doc. 14-3 at § 12.05(b).  Under Eleventh Circuit precedent, since the Plan vests the Committee with discretion, its reasonable decision is entitled to deference.  Blair v. Metro. Life Ins., 569 F. App'x 827, 830 (11th Cir. 2014).  Therefore, if the Plan is ambiguous the Committee's interpretation controls.

9

at 13-16.  Rather Plaintiff states in conclusory fashion that Count II is premised upon some "fiduciary duty".  Doc. 16. at 21.  Again, Count II states, in a conclusory fashion, that:

> By making the decision to pay and then allegedly paying the benefits to the Decedent's sister in violation of their duty of prudence and in violation of the documents and instruments governing the Plan, Fidelity breached its fiduciary duty.

Doc. 19 at ¶ 43.  This Count contains no substance if Plaintiff's incorrect assertion that the underlying benefit determination was not correct is stripped from the allegation.  Thus, if her benefit denial claim is dismissed, Count II also must fail as she has pled herself out of court.  Plaintiff ignores this problem in her brief.

Count III fares no better.  In Count III, Plaintiff concludes that the Plan and Committee failed to train or monitor Fidelity, without the benefit of a single factual allegation, and that as a result, the benefit claim was wrongly decided.  Doc. 21 at. 15-16.  Count III states, in conclusory fashion, that:

> The Committee also breached its fiduciary duties to Plaintiff under ERISA by failing to adequately select, train, and monitor Plan service providers, including Fidelity, with regard to the automatic spousal designation requirements under the Plan to change beneficiaries.

Doc. 19 at ¶ 49.  But a fiduciary duty claim requires an element of harm, see Ironworkers Local 272 v. Bowen, 695 F.2d 531,536 (11th Cir. 1983) (requiring

10

connection between alleged wrong and loss in a fiduciary duty claim), and the only harm suggested here, again, is – wait for it – that her benefit claim was wrongly decided. See Doc. 19 at ¶51, 52. As that decision was right as a matter of law, any fiduciary duty claim based upon it would fail.[3] Thus, as with Court II, if the Committee's decision was correct, Count III must fail.

### b. Plaintiff's Section 1132(a)(3) Claims Must Also Fail Because She Has an Adequate Remedy Under Section 1132(a)(1)(B).

In the Eleventh Circuit, Plaintiff cannot simultaneously maintain a claim for fiduciary breach under Section 1132(a)(3) when she has an adequate remedy for Plan benefits under Section 1132(a)(1)(B). Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1276, (11th Cir. 2005); Jones v. Am. Gen. Life & Accident Ins. Co., 370 F.3d 1065, 1073 (11th Cir. 2004); See Katz v. Comprehensive Plan of Group Ins., 197 F.3d 1084 (11th Cir. 1999). Plaintiff argues, unpersuasively, that she should be allowed to bring forth duplicative counts supported by nothing but conclusory allegations for two reasons. Doc. 21 at 14-15. First, she argues that

---

[3] Beyond that, Count III also fails because Plaintiff's conclusory pleading of a failure to select, train and monitor Fidelity and unnamed others is facially insufficient. Paragraph 49 contains no factual allegations describing the factual basis for any alleged failure to select, train or monitor. Id. Rather, Paragraph 49 is simply a conclusion that is entitled to no deference whatsoever at the pleading stage. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1964-65, 167 L.Ed.2d 929, 940 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …")

since the Supreme Court's decision in Amara things have somehow changed with regard to her ability to repackage benefits denial claims as purported fiduciary breach claims. Id. at 15.  Second, Plaintiff argues that she should be able to proceed simply because this case is at the pleading stage. Id. at 15. Both arguments lack merit.

Amara is the second in a line of cases that starts with Varity Corporation v. Howe, 516 U.S. 489 (1995). Both are cases – unlike this one – that involve misrepresentations to participants like Mr. Crowder. In Varity, an employer tricked its employees into withdrawing from their current plan and entering into a new, less favorable plan. Id. at 507. The Supreme Court noted "where Congress elsewhere provided adequate relief for a beneficiary's injury" there is no need to resort to 1132(a)(3) for equitable relief. Id. at 515. However, the Supreme Court explained that the employees who had been tricked out of their plan based on the misrepresentations of their employer had no adequate remedy under the plan. Id. After all those employees were no longer members of the plan. Id. Thus, the plaintiffs in Variety were allowed to proceed under 1132(a)(3) because they had no adequate remedy under 1132(a)(1)(B) (and not because Variety was "relief" case rather than a "pleading" case, whatever Plaintiff means by that. Cf. Doc. 21 at 14.).

Further, contrary to Plaintiff's assertions, Amara, which followed Varity 15 years later, does not change the fact that Plaintiff cannot simultaneously maintain a claim for fiduciary breach under Section 1132(a)(3) when she has an adequate remedy for Plan benefits under Section 1132(a)(1)(B). Like Variety, Amara is a misrepresentation case where an employer created a new pension plan that: penalized early retirement; reduced previously earned benefits; and shifted other risks to employees. Amara, 563 U.S. at 429-31. Also like Variety, in Amara, the court found that the employer "intentionally misled its employees" hiding these changes. Id. at 143. After the switch, the employees sued. Id.

Amara does not change the fact that Plaintiff is barred from bringing a 1132(a)(3) claim when she had an adequate remedy under 1132(a)(1)(B). To the contrary, in Amara, the employees had no 1132(a)(1)(B) claim without reformation of the plan to remedy the misrepresentation under 1131(a)(3). Unlike Varity or Amara, this is not a misrepresentation case and Plaintiff has an adequate remedy under 1132(a)(1)(B).[4] Therefore her fiduciary duty claims should be dismissed.

Further, as evidenced by the case law following Amara, Courts in the Eleventh Circuit routinely dismiss such claims at the pleadings stage. Indeed,

---

[4] Although Plaintiff mentions the phrase "misrepresenting facts and concealing records", she does not alleges what fact Defendants misrepresented. Doc. 19 at ¶ 48. This is clearly a conclusion that is entitled to no deference. See supra note 3.

since Amara, the Northern District of Georgia has dismissed numerous 1132(a)(3) claims at the pleading stage reasoning that Plaintiff had an adequate remedy under 1132(a)(1)(B).  See  Williamson v. Travelport, LP, 289 F. Supp. 3d 1305, 1321-22 (N.D. Ga. 2018) (dismissing a fiduciary duty claim at the pleadings stage reasoning, "The Eleventh Circuit has held that a plaintiff who has an "available" claim under another subsection of § 1132(a) cannot proceed under § 1132(a)(3), "and, moreover, that 'the availability of an adequate remedy under the law . . . does not mean, nor does it guarantee, an adjudication in one's favor.'"); Vaughn v. Aetna Life Ins. Co., No. 1:16-cv-01107-WSD, 2017 U.S. Dist. LEXIS 26743 (N.D. Ga. Feb. 27, 2017) (dismissing a fiduciary duty claim at the pleadings stage); Griffin v. Blue Cross & Blue Shield Healthcare Plan of Ga., Inc., 157 F. Supp. 3d 1255, 1257-58 (N.D. Ga. 2015) (same).  Plaintiff's fiduciary duty claims should be dismissed because they must fail if Committee's decision was correct, and because Plaintiff has an adequate remedy under 1132(a)(1)(B).[5]

---

[5] Count II should also be dismissed because Plaintiff fails to adequately allege that Fidelity breached its duties as a fiduciary.  Again, Fidelity has no fiduciary-duties because it only performed ministerial tasks.  Fidelity was not a responsible for: determining benefit eligibility, Doc. 14-3 at 12.05(b); paying benefits, id. at 12.05(c); controlling Plan assets, id. at 12.06; or managing Plan assets, id. at (c).  For this reason, in addition to the reasons provided in Section II of this Reply, Fidelity is not a proper defendant and should be dismissed.

### III. <u>Conclusion</u>

The Court should dismiss the Amended Complaint because it fails to state a claim as a matter of law.

Respectfully submitted this 28th day of November 2018.

**THOMPSON HINE LLP**

*/s  J. Timothy Mc Donald*
J. Timothy Mc Donald
Georgia Bar No. 489420
Jason R. Carruthers
Georgia Bar No. 211098
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA  30326
T:  (404) 541-2900; F: (404) 541-2905
Tim.McDonald@ThompsonHine.com
Jason.Carruthers@ThompsonHine.com

*Attorneys for Defendants The Delta Family-Care Savings Plan, The Administrative Committee of Delta Air Lines, Inc., and Fidelity Workplace Services LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this motion was prepared using one of the font and point selections approved by this Court in L.R. 5.1C, N.D. Ga. Specifically, Times New Roman font was used in 14 point.

This 28th day of November 2018.

*/s/ J. Timothy McDonald*
J. Timothy McDonald
Georgia Bar No. 489420

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will automatically send an e-mail notification of such filing to all counsel of record.

This 28th day of November 2018.

*/s/ J. Timothy McDonald*
J. Timothy McDonald
Georgia Bar No. 489420
